UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ABCO REFRIGERATION SUPPLY CORP.        :

V.                                     :        Civil No. 3:02 cv 1893 (PCD)

DSM, INC. and MARTHA L. PELLECCHIA     :

**MEMORANDUM OF LAW IN SUPPORT OF APPLICATION TO
SUBSTITUTE BOND WITH SURETY FOR JUDGMENT LIENS**

The defendant, Martha L. Pellecchia (the "Defendant"), hereby submits her Memorandum of Law in Support of Application to Substitute Bond with Surety for Judgment Liens.

**I.    STATEMENT OF FACTS AND NATURE OF PROCEEDINGS**

On September 9, 2004, ABCO Refrigeration Supply Corp. (the "Plaintiff") recorded three judgment liens on the property known as 170 Geer Road, Killingly, Connecticut, at Volume 969, pages 73-78, Volume 969, Pages 79-84 and Volume 969, Pages 84-88 of the Town of Killingly Land Records (the "Judgment Liens"). The Defendant and her husband, Joseph J. Pellecchia, Sr. ("Mr. Pellecchia") are joint owners of 170 Geer Road, Killingly, Connecticut. Since purchasing said property, the land that comprises 170 Geer Road has been subdivided into four lots, which lots are known as Lot 1, Lot 2, Lot 3 and Lot 4.

1

In November 2004 and March 2005, the Defendant and Mr. Pellecchia entered into Land and Purchase Sale Agreements to sell Lot 2 and Lot 3, respectively (the "Sale Contracts"). A true and genuine copy of the Sale Contracts are appended hereto as <u>Exhibit A</u> and <u>Exhibit B</u>, respectively. The Sale Contracts represent *bona fide* arms length transactions. Pursuant to the Sale Contracts, Lot 2 and Lot 3 (together, the "Properties") could not be sold without a release of any and all judgment liens encumbering them. Therefore, in order to close on the Properties the Judgment Liens must be released.

Pursuant to the Sale Contracts, the purchase price to be paid for Lot 2 and Lot 3 is $95,000.00 each (the "Purchase Price"). This price equals or exceeds the present fair market value of the Properties. Additionally, the encumbrances recorded against the Properties prior to the Judgment Liens fully encumber the Properties such that the Judgment Liens are worthless. As a result, the Defendant now seeks an order of this Court, compelling the Defendant to release the Judgment Liens in return for a one dollar bond in favor of the Plaintiff.

## II.  **LEGAL STANDARD**

Conn. Gen. Stat. § 52-380e provides a court with the authority to compel the release of a judgment lien when substituted with "(1) a bond with surety or (2) a lien on any other property of the judgment debtor which has an equal or greater net equity value than the

2

amount secured by the lien." Conn. Gen. Stat. § 52-380e (2004). At a properly noticed hearing, a court must determine the sufficiency of the substitution proffered by the judgment debtor. Id. Such a sufficiency evaluation depends on the value of the property as well as the value of all encumbrances on the property ahead of that of the judgment creditor. Bankers Trust v. Neal, 779 A.2d 813, 816 (Conn. App. Ct. 2001); FDIC v. Bombero, 657 A.2d 668, 769-771 (Conn. App. Ct. 1995); Am. Bus. Credit, Inc. v. Cancellaro, CV020170465, 2003 Conn. Super. LEXIS 678, at *8 (Conn. Super. Ct. March 11, 2003). When such prior encumbrances fully encumber or exceed the value of the property, the judgment creditor's lien is worthless. Bankers Trust, 779 A.2d at 816; Bombero, 657 A.2d at 771; Am. Bus. Credit, 2003 Conn. Super. LEXIS 678, at *8.

Once the sufficiency analysis has been done, and the court "discharges" the lien, the judgment creditor "shall release any lien so discharged by sending a release sufficient under section 52-380d, by first class mail, postage prepaid, to the judgment debtor." Conn. Gen. Stat. § 52-380e.

### III. ARGUMENT

The Defendant and Mr. Pellecchia are under contract to sell Lot 2 and Lot 3 for $95,000.00 each. As testimony at the hearing will prove, the Properties' fair market value is equal to or less then the Purchase Price. Testimony will further establish that the mortgages

3

currently encumbering the Properties, which mortgages were recorded prior to the Judgment Liens, fully encumber the Properties. Accordingly, the Judgment Liens are worthless and should be substituted for a one dollar bond in favor of the Plaintiff.

## IV.  CONCLUSION

**WHEREFORE**, the defendant, Martha L. Pellecchia, respectfully requests that this Court grant her Application to Substitute Bond with Surety for Judgment Lien, order the substitution of a bond with surety in favor of the Plaintiff for the Judgment Liens, further order the Plaintiff to execute and deliver to the Defendant releases of the Judgment Liens, and grant such other and further relief as this Court deems just and proper.

THE DEFENDANT,
MARTHA L. PELLECCHIA

By: *Nicole L Barber*
Stephen M. Kindseth (ct14640)
Nicole L. Barber (ct22977)
ZEISLER & ZEISLER, P.C.
558 Clinton Avenue
P.O. Box 3186
Bridgeport, CT  06605-0186
(203) 368-4234
Her attorneys

4

**EXHIBIT A**

**Eastern Connecticut Association of REALTORS**
# LAND PURCHASE AND SALE AGREEMENT

Page 1 of 4

Buyer(s) Ryan and Heidi Devine
Address(es) 830 Greenwich Ave
Warwick, RI 02886
Seller(s) Joseph and Martha Pellechia
Address(es) _____

Seller agrees to sell and Buyer agrees to purchase certain real property known as Lot 2 Gear Rd
Killingly, CT more fully described in the land records, town of Killingly, CT, in Vol 309 Page 203

1. **PURCHASE PRICE** ............................................................................................... $ 95,000 —
   Payable as follows:
   A. By deposit, subject to collection, to be applied toward Buyer's down payment or closing costs... $ 1,000 — A.
   B. Additional deposit by upon acceptance 20____. If not received by the Seller's agent on or before the above date then Buyer shall be in default......... $ 4,000 — B.
   C. By proceeds from institutional financing............................................................... $ 60,000 C.
   D. By proceeds from Seller financing (see attached addendum)................................ $ ———— D.
   E. Balance by cash or cashier's check at closing (or such greater or lesser amount as may be required after credits, adjustments and prorations.).......... $ 30,000 E.

2. **MORTGAGE CONTINGENCIES:** (Check one)
   A (✓) This Agreement is contingent upon the Buyer obtaining a commitment for a conventional/VA mortgage. fixed in the amount of $ 60,000, amortized for a term of 30 years at an initial interest rate not to exceed
   (fixed, variable, etc)
   prevailing per cent per annum, and not exceeding 0 points. Buyer agrees to apply for a mortgage within 7 days of Seller's acceptance. If Buyer fails to make formal application by said date, Buyer shall be in default of this Agreement and shall forfeit all deposit monies. Mortgage commitment shall be on or before 12/01/04. It is further agreed that if, after diligent effort, the Buyer is unable to obtain the mortgage by said commitment date, then said deposit shall be returned to the Buyer, provided the Seller or Seller's agent has received written notice from the Buyer with proof of said inability within five (5) calendar days after said commitment date, whereupon this Agreement shall be null and void. In the event the Seller or Seller's agent has not received said notice as specified, then this mortgage contingency shall be deemed satisfied. Buyer grants permission to the lending institution to provide status of his loan to the agents involved in this transaction.

   B. ( ) Terms of assumption of existing loan: Buyer is assuming and agreeing to pay the existing first mortgage on the property with an approximate balance of $ _____. Seller represents mortgage is assumable and shall be in good standing at time of closing.

   C. ( ) Cash sale. There is no mortgage contingency.

3. **ESCROW DEPOSIT:** The deposits specified above shall be made at the stated times. All deposits shall be made payable to the listing broker, Partner Properties, and unless otherwise agreed upon between the parties elsewhere in this Agreement, shall be placed into a pooled, interest bearing account as set forth in CGS 8-265f, with the interest payable to Connecticut Housing Finance Authority. At the time of closing, the listing broker shall pay the deposit funds to the Seller. Except as herein authorized, the listing broker shall not pay the deposit funds to anyone without the written consent of all parties to this Agreement or by court order. In the event any deposit funds payable pursuant to this Agreement are not so paid by Buyer, Seller may give written notice of such failure to Buyer at the address specified in this Agreement, by certified mail, and if such notice is given and a period of 5 days thereafter elapses without Buyer having corrected such failure, Seller may (1) declare Buyer to be in default and (2) terminate this Agreement and the Seller shall be relieved of all obligations hereunder. The prevailing party in any legal action arising out of a dispute over the deposit shall be awarded reasonable attorneys' fees.

Buyer _____ 11/9/04   Seller _____ (POA) 11-11-04
Buyer Heidi A. Devine 11/9/04   Seller _____
Buyer _____   Seller _____

*Property Listing Modification*
*Monday, May 16, 2005*
# Partner Properties LLC
### Real Estate Search Center/ Dayville

Joseph & Martha Pellecchia
151 Geer Road
Danielson, CT 06239

Subject Property: Lot 2 Geer Road, Danielson, CT
Property Number: 149621    Account Number: 2652

The seller(s) authorize Partner Properties LLC, to modify the listing information for the subject property shown above. This modification shall become part of the original, or any subsequent listing agreements for the subject property. All parties agree that faxed signatures are binding.

Extend listing term from: 5/30/2005    through 6/30/05

Change sale price from: $95,000.00    to $ _____

Change other terms to: _____

Sign: _____ Date: 5-18-05
Seller: Martha Pellecchia - (860) 774-8894

Sign: _____ Date: 5-18-05
Seller: Joseph Pellecchia - (860) 774-8894

Sign: _____ Date: _____
Seller: _____

_____ Date: 5-18-05
For Partner Properties: David Cournoyer - 860.779.6107 ext. 244

Partner Properties LLC
485 Hartford Pike, Post Office Box 877 Dayville, CT 06241
Telephone 860.779.1939  Fax 860.779.0824
www.askpartner.com

Office Use Only:
Property No: _____    Entered MLS: 5-24    Partner: 5-24    By: mm

Eastern Connecticut Association of REALTORS-
## LAND PURCHASE AND SALE AGREEMENT

Page 2 of 4

4. **DEFAULT:** On default by either party, without the other party being in default, the party who is not in default shall have the right of:
   (A) Buyer Default: The Seller retaining the deposit money as liquidated damages OR proceeding with any other remedy at law or in equity.
   (B) Seller Default: The Buyer reclaiming the deposit money; plus an amount equal to the deposit money as liquidated damages OR proceeding with any other remedy at law or in equity.

If a legal action is brought to enforce any provision of this Agreement, the prevailing party, including a Broker who is made a party to such actions and who has not significantly contributed to the default, shall be entitled to court costs and reasonable attorney's fees.

5. **PLANTINGS, TOPSOIL, ETC.** Included in the sale as part of said premises are all trees, shrubs, plants and topsoil located thereon. The SELLER agrees not to remove, cut or otherwise alter same during the term of this Agreement. The following described real and/or personal property shall remain:

_____
_____
_____

(Unless otherwise noted these items shall be in working condition on the day of closing.)

6. **ENCUMBRANCES:** The Certificate of Title, if desired, shall be provided by and at the Buyer's expense. Unless otherwise noted the property will be conveyed free and clear of liens and subject to all provisions of any ordinance, municipal regulation, public or private law agreements, restrictions and easements of record, and facts disclosed by personal inspection of the property or an accurate survey, provided they do not render the property unmarketable pursuant to the Standards of Title as applied by the Connecticut Bar Association.

The parties acknowledge a sewer assessment in the amount of approximately $_____ to be (paid/assumed) by the _Seller_ at closing.
The parties acknowledge a water assessment in the amount of approximately $_____ to be (paid/assumed) by the _Seller_ at closing.

7. **ADJUSTMENTS:** Unless otherwise stated in this Agreement, all adjustments of taxes, water, sewer, interest, condominium fees, rents, fuel, etc., will be made on the day of closing.

8. **RISK OF LOSS:** Risk of loss by fire, flood, theft or other casualty until delivery of the deed shall be upon the Seller. In the event of loss or damage that cannot be repaired by the time of closing so the property is in substantially the same condition as on the date of this Agreement, then the Buyer shall have the choice of:
   (A) receiving the benefit and proceeds of the Seller's insurance coverage and taking title, or
   (B) rescinding this Agreement and any monies paid under this Agreement shall be returned to the Buyer and all parties shall be relieved of further liability.

9. **OCCUPANCY:** On the date and time of closing, the Seller shall deliver full possession and occupancy of said premises to the Buyer, free from all occupants and possessions, except as otherwise specifically provided herein.

10. **ASSIGNMENT and SURVIVORSHIP:** This Agreement may be assigned by either party without written consent of the other, but shall be binding upon the heirs, executors, administrators, successors and assigns of the parties hereto. Provided, this Agreement may not be assigned, without the express consent of the Seller, if it contains a provision for Seller financing.

11. **EQUAL HOUSING RIGHTS:** Buyer acknowledges his right to be shown any property within his price range in any area specified by the Buyer and which is available to the real estate broker.

12. **COMMISSION:** The real estate agency(ies) in this transaction is/are _Partner Properties/Remax Bell Park_. Unless otherwise provided for within this Agreement, Seller agrees to pay the real estate commission as per the Listing Agreement, at the time of closing.

Buyer _[signature]_ 11/11/04    Seller _[signature]_ (POA) 11-11-04
Buyer _Heidi M. Devine_ 11/11/04    Seller _____
Buyer _____    Seller _____

Eastern Connecticut Association of REALTORS
## LAND PURCHASE AND SALE AGREEMENT

Page 3 of 4

**13. CLOSING:** The Seller will deliver to the Buyer a good and sufficient Warranty (or _____) Deed, conveying marketable title, on or before the __23__ day of __December__, 20 __04__.

**14. TIME TO ACCEPT:** Unless the Buyer, or Buyer's representative, has received a copy of this Agreement, signed and initialed (if applicable) by all parties, on or before __11/11/04   6 pm__, this offer may be revoked at the discretion of the Buyer, in which case the Buyer's deposit shall be returned.

**15. MISCELLANEOUS REPRESENTATIONS**

   a. In the event that a private water source is servicing the premises, the SELLER represents that the water source is providing adequate amounts of potable water for normal household use as of the date hereof.
   b. In the event that a private sewerage system is servicing the premises, the SELLER represents that, to the best of the SELLER'S knowledge, it is in good working order as of the date hereof.

**16. INSPECTION SECTION:** (Buyer must initial yes or no for each inspection) In the event the Buyer does not perform any of the inspections indicated, by the indicated completion date, then such inspections are waived and no longer a contingency in this Agreement.

**Buyer(s) Initials**

| Yes | No | |
|---|---|---|
| RJD / HMD | | A. A percolation and/or deep hole test of the premises at the sole cost and expense of the SELLER ✓ BUYER ____ satisfactory to the __Northeast__ Board of Health. If the results of the test(s) are not satisfactory to the __Northeast__ Board of Health, the BUYER shall notify the SELLER in writing on or before __within 5 days__ 20___, and this Agreement shall become null and void, and all payments made hereunder shall be refunded and all obligations to each other shall cease. |
| | RJD / HMD | B. Obtaining at the BUYER'S sole cost and expense, a building permit for the construction of a single family and/or _____ structure. In the event that the BUYER is unable to obtain a building permit, the BUYER shall notify the SELLER in writing on or before _____, 20___ and this Agreement shall become null and void, and all payments made hereunder shall be refunded and all obligations to each other shall cease. |
| | RJD / HMD | C. A septic system plan for the premises prepared at the sole cost and expense of the SELLER ____ BUYER ____ satisfactory to the _____ Board of Health. If the septic system plan is not satisfactory to the _____ Board of Health, the BUYER shall notify the SELLER in writing on or before _____, 20___ and this Agreement shall become null and void, and all payments made hereunder shall be refunded and all obligations to each other shall cease. |
| | RJD / HMD | D. A(n) _____ survey for the premises prepared at the sole cost and expense of the SELLER ____ BUYER ____ satisfactory to the BUYER. |
| RJD / HMD | | E. **OTHER INSPECTIONS CLAUSE** - (if none, state none) (See remedy clause below) (A-1) within 5 days of perc test result |

**17. REMEDY CLAUSE FOR INSPECTION(S) FOR A-E ABOVE** - If an inspection/test indicates fault, defect, or damage according to the criteria identified in each inspection clause, then the Buyer shall give the Seller and/or Seller's Broker(s) written notice within five (5) days after Buyer's receipt of the inspection report(s) or the completion date as indicated on each inspection clause, whichever is sooner. The written notice shall clearly state the reason(s) that the inspection/test is unacceptable and shall include a copy of the inspection/test report. Failure of Buyer to provide written notice of an unacceptable inspection/test shall void any right of Buyer to terminate this Agreement. If Buyer provides written notice of such an unacceptable inspection/test, the Seller shall have five (5) days to inform Buyer that they are unwilling or unable to correct the unacceptable condition(s) at Seller expense. If the Seller fails to respond or Buyer and Seller cannot agree on correcting the unacceptable condition(s), the Buyer shall have the option to terminate this Agreement by giving written notice to the Seller and/or Seller's Broker, in which case, all sums paid on account of the purchase price shall be returned to the Buyer.

Buyer _____ 11/__/04    Seller _____(POA) 11-11-04
                            Date                                              Date
Buyer __Heidi M. Deon__ __/__/04    Seller _____
                            Date                                              Date
Buyer _____          Seller _____
                            Date                                              Date

Eastern Connecticut Association of REALTORS®  Page 4 of 4
**LAND PURCHASE AND SALE AGREEMENT**

19. **ADDITIONAL PROVISIONS:** (if none state none) The lot to be an approved building lot
(1) with all state, town and Board of Health approvals prior to closing.
Seller to install paved driveway from road to junction of lot 3.
Contingent upon perc tests suitable for a three bedroom home.
(2) ~~the minimum size house to be 2400 sqft~~
All restrictions pertaining to square footage of the house be removed prior to closing.

20. **ENTIRE AGREEMENT:** This Agreement and attached addenda (if any), represents the entire Agreement between the parties. It shall not be changed orally but only by a written instrument which is signed by all parties. The effective date of this Agreement shall be the date on which all signatures, and initials (if any), have been affixed hereto.

21. **Use of Electronic Record.** The parties agree that they may use an electronic record, including fax or e-mail, to make and keep this Agreement. Either party has the right to withdraw consent to have a record of this Agreement provided or made available to them in electronic form, but that does not permit that party to withdraw consent to the Agreement itself once it has been signed. A party's agreement to use an electronic record applies only to this particular real estate transaction and not to all real estate transactions.

For access to and retention of faxed records, there are no special hardware or software requirements beyond access to a fax machine or fax modem and accompanying software connected to a personal or laptop computer. For access to and retention of e-mail records, you will need a personal or laptop computer, Internet account and e-mail software.

The Listing Agent as agent for the Seller wishes to use
☐ Fax machine, fax number is:_____   ☐ E-mail. E-mail address is:_____
The Buyer's Agent as agent for the Buyer wishes to use
☐ Fax machine, fax number is:_____   ☐ E-mail. E-mail address is:_____

Each party will promptly inform the other of any change in E-mail address or fax number in writing.

Notice: When signed by all parties this is intended to be a legally binding Agreement. If not fully understood seek the advice of an attorney prior to signing. When the context requires herein, the masculine shall include the feminine, and the singular shall include the plural.

Notice: This Agreement and closing adjustments shall be interpreted pursuant to the Residential Real Estate Closing Customs as promulgated by the Bar Association (if any), as amended, of the County in which the property is located.

Buyer _____ Date 11/14/04   Seller _____ (POA) 11-11-04 Date
Buyer Heidi M. Davine Date 11/14/04   Seller _____ Date
Buyer _____ Date   Seller _____ Date

06/02/2005 13:43   8607746733                 HAR                          PAGE 03
FROM                              (WED)MAY 25 2005  15/ST. 15:44/No.

05/13/2005 13:21 FAX 4019211672    Ryan Devine                             ☒001
 05/13/2005 09:45   1860    9244              REMAX BELL P                 PAGE 02

LOT 2



## ADDENDUM TO PURCHASE AND SALES AGREEMENT

In reference to the Purchase and Sales Agreement dated *November 11, 2004* between Ryan and Heidi Devine, the BUYER(s) and Martha Pellecchia, the SELLER(s) for property located at *Lot #2, Geer Rd., Killingly, CT.*

### ADDITIONAL PROVISIONS:

Due to circumstances beyond the BUYERS AND SELLERS control, it is understood and agreed that the closing date is to be extended from May 13, 2005 to June 15, 2005. It is also agreed and understood that if the driveway can be paved and approved earlier, the closing will be moved to an earlier mutually agreed upon date.

_____ 5/13/05        _____ Sr. 5-18-05
Buyer           Date                  Seller     POA       Date

_____ 5-13-05        _____ 5-18-05
Buyer           Date                  Seller     POA       Date

                                     _____ 5-18-05
_____                Agent                 Date
Agent           Date

 

RE/MAX Bell Park Realty
810 Hartford Pike (Rt. 101)
Dayville, Connecticut 06241
Office: (860) 774-7900
Fax: (860) 779-9244

**EXHIBIT B**

Case 3:02-cv-01893-PCD    Document 30    Filed 06/06/2005    Page 12 of 19

Eastern Connecticut Association of REALTORS
## LAND PURCHASE AND SALE AGREEMENT

Page 1 of 4

Buyer(s) DANIEL J SMILEY
Address(es) PO BOX 1503
EAST GREENWICH RI 02818

Seller(s) MARTHA AND JOESPH PELLECHIA
Address(es) GEER RD KILLINGLY CT.

Seller agrees to sell and Buyer agrees to purchase certain real property known as LOT #3 #192 GEER RD KILLINGLY, CT more fully described in the land records, town of KILLINGLY, CT, in Vol 309 Page 203

1. **PURCHASE PRICE** ............................................................................................ $ 95,000
   Payable as follows:
   A. By deposit, subject to collection, to be applied toward Buyer's down payment or closing costs... $ 5,000 A.
   B. Additional deposit by _____, 20__. If not received by the Seller's agent on or before the above date then Buyer shall be in default................................................................ $ _____ B.
   C. By proceeds from institutional financing.................................................................. $ 90,000 C.
   D. By proceeds from Seller financing (see attached addendum)........................................... $ _____ D.
   E. Balance by cash or cashier's check at closing ( or such greater or lesser amount as may be required after credits, adjustments and prorations.)........................................................ $ _____ E.

2. **MORTGAGE CONTINGENCIES:** (Check one)
   A. ( ) This Agreement is contingent upon the Buyer obtaining a commitment for a CONV mortgage, (fixed, variable, etc.) in the amount of $ 90,000, amortized for a term of 15 years at an initial interest rate not to exceed 6.5 per cent per annum, and not exceeding _____ points. Buyer agrees to apply for a mortgage within 10 days of Seller's acceptance. If Buyer fails to make formal application by said date, Buyer shall be in default of this Agreement and shall forfeit all deposit monies. Mortgage commitment shall be on or before 3-3-05. It is further agreed that if, after diligent effort, the Buyer is unable to obtain the mortgage by said commitment date, then said deposit shall be returned to the Buyer, provided the Seller or Seller's agent has received written notice from the Buyer with proof of said inability within five (5) calendar days after said commitment date, whereupon this Agreement shall be null and void. In the event the Seller or Seller's agent has not received said notice as specified, then this mortgage contingency shall be deemed satisfied. Buyer grants permission to the lending institution to provide status of his loan to the agents involved in this transaction.

   B. ( ) Terms of assumption of existing loan: Buyer is assuming and agreeing to pay the existing first mortgage on the property with an approximate balance of $ _____. Seller represents mortgage is assumable and shall be in good standing at time of closing.

   C. ( ) Cash sale. There is no mortgage contingency.

3. **ESCROW DEPOSIT:** The deposits specified above shall be made at the stated times. All deposits shall be made payable to the listing broker MARTNEX PROP. LLC, and unless otherwise agreed upon between the parties elsewhere in this Agreement, shall be placed into a pooled, interest bearing account as set forth in CGS 8-265f, with the interest payable to Connecticut Housing Finance Authority. At the time of closing, the listing broker shall pay the deposit funds to the Seller. Except as herein authorized, the listing broker shall not pay the deposit funds to anyone without the written consent of all parties to this Agreement or by court order. In the event any deposit funds payable pursuant to this Agreement are not so paid by Buyer, Seller may give written notice of such failure to Buyer at the address specified in this Agreement, by certified mail, and if such notice is given and a period of 5 days thereafter elapses without Buyer having corrected such failure, Seller may (1) declare Buyer to be in default and (2) terminate this Agreement and the Seller shall be relieved of all obligations hereunder. The prevailing party in any legal action arising out of a dispute over the deposit shall be awarded reasonable attorneys fees.

Buyer [signed] Daniel J Smiley 3/11/05    Seller [signed] Joseph J Pellechia Sr 3-11-05
Buyer _____ Date              Seller [signed] Martha L Pellechia 3-11-05
Buyer _____ Date              Seller [signed] POA 3-11-05

Eastern Connecticut Association of REALTORS
## LAND PURCHASE AND SALE AGREEMENT

Page 2 of 4

4. **DEFAULT:** On default by either party, without the other party being in default, the party who is not in default shall have the right of
   (A) Buyer Default: The Seller retaining the deposit money as liquidated damages OR proceeding with any other remedy at law or in equity.
   (B) Seller Default: The Buyer reclaiming the deposit money; plus an amount equal to the deposit money as liquidated damages OR proceeding with any other remedy at law or in equity.

If a legal action is brought to enforce any provision of this Agreement, the prevailing party, including a Broker who is made a party to such actions and who has not significantly contributed to the default, shall be entitled to court costs and reasonable attorney's fees.

5. **PLANTINGS, TOPSOIL, ETC.** Included in the sale as part of said premises are all trees, shrubs, plants and topsoil located thereon. The SELLER agrees not to remove, cut or otherwise alter same during the term of this Agreement. The following described real and/or personal property shall remain:

_____
_____
(Unless otherwise noted these items shall be in working condition on the day of closing.)

6. **ENCUMBRANCES:** The Certificate of Title, if desired, shall be provided by and at the Buyer's expense. Unless otherwise noted the property will be conveyed free and clear of liens and subject to all provisions of any ordinance, municipal regulation, public or private law agreements, restrictions and easements of record, and facts disclosed by personal inspection of the property or an accurate survey, provided they do not render the property unmarketable pursuant to the Standards of Title as applied by the Connecticut Bar Association.

The parties acknowledge a sewer assessment in the amount of approximately $_____ to be (paid/assumed) by the _____ at closing.
The parties acknowledge a water assessment in the amount of approximately $_____ to be (paid/assumed) by the _____ at closing.

7. **ADJUSTMENTS:** Unless otherwise stated in this Agreement, all adjustments of taxes, water, sewer, interest, condominium fees, rents, fuel, etc., will be made on the day of closing.

8. **RISK OF LOSS:** Risk of loss by fire, flood, theft or other casualty until delivery of the deed shall be upon the Seller. In the event of loss or damage that cannot be repaired by the time of closing so the property is in substantially the same condition as on the date of this Agreement, then the Buyer shall have the choice of:
   (A) receiving the benefit and proceeds of the Seller's insurance coverage and taking title, or
   (B) rescinding this Agreement and any monies paid under this Agreement shall be returned to the Buyer and all parties shall be relieved of further liability.

9. **OCCUPANCY:** On the date and time of closing, the Seller shall deliver full possession and occupancy of said premises to the Buyer, free from all occupants and possessions, except as otherwise specifically provided herein.

10. **ASSIGNMENT and SURVIVORSHIP:** This Agreement may be assigned by either party without written consent of the other, but shall be binding upon the heirs, executors, administrators, successors and assigns of the parties hereto. Provided, this Agreement may not be assigned, without the express consent of the Seller, if it contains a provision for Seller financing.

11. **EQUAL HOUSING RIGHTS:** Buyer acknowledges his right to be shown any property within his price range in any area specified by the Buyer and which is available to the real estate broker.

12. **COMMISSION:** The real estate agency(ies) in this transaction is/are _PARTNER PROPERTIES LLC,_ Unless otherwise provided for within this Agreement, Seller agrees to pay the real estate commission as per the Listing Agreement, at the time of closing.

Buyer _James J. Smith_  3/11/05      Seller _Joseph I. Pellerin Sr._  3-11-05
                        Date                                            Date
Buyer _____            Seller _Martha J. Pellerin_    3-11-05
                        Date                                            Date
Buyer _____            Seller _____ POA 3-11-05
                        Date                                            Date

Eastern Connecticut Association of REALTORS
## LAND PURCHASE AND SALE AGREEMENT
Page 3 of 4

13. **CLOSING:** The Seller will deliver to the Buyer a good and sufficient Warranty (or _____) Deed, conveying marketable title, on or before the __29__ day of __APRIL__, 20__05__.

14. **TIME TO ACCEPT:** Unless the Buyer, or Buyer's representative, has received a copy of this Agreement, signed and initialed (if applicable) by all parties, on or before __3-11-05__, this offer may be revoked at the discretion of the Buyer, in which case the Buyer's deposit shall be returned.

15. **MISCELLANEOUS REPRESENTATIONS**
   a. In the event that a private water source is servicing the premises, the SELLER represents that the water source is providing adequate amounts of potable water for normal household use as of the date hereof.
   b. In the event that a private sewerage system is servicing the premises, the SELLER represents that, to the best of the SELLER'S knowledge, it is in good working order as of the date hereof.

16. **INSPECTION SECTION:** (Buyer must initial yes or no for each inspection) In the event the Buyer does not perform any of the inspections indicated, by the indicated completion date, then such inspections are waived and no longer a contingency in this Agreement.

**Buyer(s) Initials**

Yes: ✓ J.S. 3/11/05
A. A percolation and/or deep hole test of the premises at the sole cost and expense of the SELLER ✓ BUYER ____ satisfactory to the __NEDDH__ Board of Health. If the results of the test(s) are not satisfactory to the __NEDDH__ Board of Health, the BUYER shall notify the SELLER in writing on or before __4-29__, 20__05__, and this Agreement shall become null and void, and all payments made hereunder shall be refunded and all obligations to each other shall cease.

No: ✓ J.S. 3/11/05
B. Obtaining at the BUYER'S sole cost and expense, a building permit for the construction of a single family and/or _____ structure. In the event that the BUYER is unable to obtain a building permit, the BUYER shall notify the SELLER in writing on or before _____, 20____ and this Agreement shall become null and void, and all payments made hereunder shall be refunded and all obligations to each other shall cease.

Yes: ✓ J.S. 3/11/05
C. A septic system plan for the premises prepared at the sole cost and expense of the SELLER ____ BUYER ✓ satisfactory to the __NEDDH__ Board of Health. If the septic system plan is not satisfactory to the __NEDDH__ Board of Health, the BUYER shall notify the SELLER in writing on or before __4-29-05__, 20____ and this Agreement shall become null and void, and all payments made hereunder shall be refunded and all obligations to each other shall cease.

No: ✓ J.S. 3/11/05
D. A(n) _____ survey for the premises prepared at the sole cost and expense of the SELLER ____ BUYER ____ satisfactory to the BUYER.

E. **OTHER INSPECTIONS CLAUSE** - (if none, state none) (See remedy clause below)
_____

17. **REMEDY CLAUSE FOR INSPECTION(S) FOR A-E ABOVE** - If an inspection/test indicates fault, defect, or damage according to the criteria identified in each inspection clause, then the Buyer shall give the Seller and/or Seller's Broker(s) written notice within five (5) days after Buyer's receipt of the inspection report(s) or the completion date as indicated on each inspection clause, whichever is sooner. The written notice shall clearly state the reason(s) that the inspection/test is unacceptable and shall include a copy of the inspection/test report. Failure of Buyer to provide written notice of an unacceptable inspection/test shall void any right of Buyer to terminate this Agreement. If Buyer provides written notice of such an unacceptable inspection/test, the Seller shall have five (5) days to inform Buyer that they are unwilling or unable to correct the unacceptable condition(s) at Seller expense. If the Seller fails to respond or Buyer and Seller cannot agree on correcting the unacceptable condition(s), the Buyer shall have the option to terminate this Agreement by giving written notice to the Seller and/or Seller's Broker, in which case, all sums paid on account of the purchase price shall be returned to the Buyer.

Buyer _Jarrid J. Smith_ 3/11/05    Seller _Joseph J. Pelletier_ 3-11-05
Buyer _____ Date          Seller _Marilyn J. Pelletier_ 3-11-05
Buyer _____ Date          Seller _____ P.O.A 3-11-05

Eastern Connecticut Association of REALTORS®
**LAND PURCHASE AND SALE AGREEMENT**

Page 4 of 4

19. **ADDITIONAL PROVISIONS:** (if none state none) #1 INSTALLATION AND APPROVAL OF THE DRIVEWAY BY KILLINGLY P&Z COMMISSION. #2 SUBJECT TO APPROVAL OF CONSTRUCTION LOAN LOAN. #3 SUBJECT TO APPROVAL OF COST AND DESIGN OF SEPTIC SYSTEM.

20. **ENTIRE AGREEMENT:** This Agreement and attached addenda (if any), represents the entire Agreement between the parties. It shall not be changed orally but only by a written instrument which is signed by all parties. The effective date of this Agreement shall be the date on which all signatures, and initials (if any), have been affixed hereto.

21. **Use of Electronic Record.** The parties agree that they may use an electronic record, including fax or e-mail, to make and keep this Agreement. Either party has the right to withdraw consent to have a record of this Agreement provided or made available to them in electronic form, but that does not permit that party to withdraw consent to the Agreement itself once it has been signed. A party's agreement to use an electronic record applies only to this particular real estate transaction and not to all real estate transactions.

For access to and retention of faxed records, there are no special hardware or software requirements beyond access to a fax machine or fax modem and accompanying software connected to a personal or laptop computer. For access to and retention of e-mail records, you will need a personal or laptop computer, Internet account and e-mail software.

The Listing Agent as agent for the Seller wishes to use
☒ Fax machine. fax number is: 860-779-0824     ☒ E-mail. E-mail address is: DCOURO@ASK
                                                                              DATETNER.COM
The Buyer's Agent as agent for the Buyer wishes to use
☐ Fax machine. fax number is: _____     ☐ E-mail. E-mail address is: _____

Each party will promptly inform the other of any change in E-mail address or fax number in writing.

Notice:   When signed by all parties this is intended to be a legally binding Agreement. If not fully understood seek the advice of an attorney prior to signing. When the context requires herein, the masculine shall include the feminine, and the singular shall include the plural.

Notice:   This Agreement and closing adjustments shall be interpreted pursuant to the Residential Real Estate Closing Customs as promulgated by the Bar Association (if any), as amended, of the County in which the property is located.

Buyer _Daniel J. Smith_ 3/11/05     Seller _Joseph T. Pelletier_ 3-11-05
                          Date                                    Date
Buyer _____       Seller _Marlene J. Pelletier_ 3-11-05
                          Date                                    Date
Buyer _____       Seller _____ P.O.A. 3-11-05
                          Date                                    Date

06/02/2005 13:43  8607746733                                                      PAGE 13
FROM                                                     (WED) MAY 25 2005

# Fax Transmittal Form

**Partner Properties LLC**
485 Hartford Pike • Post Office Box 977
Dayville, CT 06241 • Fax 860.779.0824
Phone 860.779.1939 • www.askpartner.com

From: [signature] Dave Cournoyer
Phone: 860.779.6107 ext 254
Fax: 860.779.0824
Email: Dcour@askpartner.com

To:
Name: Cathy Dupont / Citizens
Company: _____
Phone number: (___) _____
Fax number: (___) 774-2237
             774-6733

Date sent: 5/29/05
Time sent: 5:30 am
Number of pages including cover page: 2

☐ Urgent          ☐ Please Comment
☐ For Review      ☐ Please Reply

Subject Property: Lot 3 Deer Rd

LOT#3

## *Property Listing Modification*
### *Monday, May 16, 2005*
# Partner Properties LLC
### Real Estate Search Center/ Dayville

Joseph & Martha Pellecchia
151 Geer Road
Danielson, CT 06239

**Subject Property: lot 3 Geer Road, Danielson, CT**
Property Number: 149624     Account Number: 2652

The seller(s) authorize Partner Properties LLC, to modify the listing information for the subject property shown above. This modification shall become part of the original, or any subsequent listing agreements for the subject property. All parties agree that faxed signatures are binding.

Extend listing term from: 5/30/2005     through 6/30/05

Change sale price from: $95,000.00     to $_____

Change other terms to: _____

Sign: _____ (POA)     Date: 5-18-05
Seller: Martha Pellecchia - (860) 774-8894

Sign: Joseph Pellecchia     Date: 5-18-05
Seller: Joseph Pellecchia - (860) 774-8894

Sign: _____ POA     Date: _____
Seller: 

Sign: _____     Date: 5-16-05
For Partner Properties: David Cournoyer - 860.779.6107 ext. 244

**Partner Properties LLC**
485 Hartford Pike, Post Office Box 877 Dayville, CT 06241
Telephone 860.779.1939   Fax 860.779.0824
www.askpartner.com

| Office Use Only: | | | |
|---|---|---|---|
| Property No: | Entered MLS: 5-24 | Partner: 5-24 | By: mm |

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ABCO REFRIGERATION SUPPLY CORP.    :

V.                                 :        Civil No. 3:02 cv 1893 (PCD)

DSM, INC. and MARTHA L. PELLECCHIA  :

### CERTIFICATION OF SERVICE

This is to certify that I sent a copy of the foregoing, via first-class mail, postage prepaid, on the 3rd day of June, 2005, to the following parties:

Michael Wrona, Esq.
Halloran & Sage, L.L.P.
225 Asylum Street
Hartford, CT 06103-4303

*Nicole L. Barber*
Nicole L. Barber